**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 11, 2022**

# In the Court of Appeals of Georgia

A22A0667. NICHOLS v. THE STATE.

PER CURIAM.

A jury found Stephen Nichols guilty of aggravated assault and other crimes. Nichols appeals from the denial of his motion for new trial, arguing that the trial court erred by requiring him to be handcuffed during a portion of the trial.[1] For the reasons that follow, we affirm.

---

[1] We note that Nichols filed a pro se "reply brief" seeking to raise several additional claims of error. However, Nichols was represented by counsel at the time, and this Court "only consider[s] the enumerations of error and brief presented by counsel when a party is represented by counsel on appeal." *Peterkin v. State*, 222 Ga. App. 329, 330 (1) (474 SE2d 231) (1996). Moreover, to the extent Nichols seeks to raise additional enumerations of error, "an appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *Williams v. State*, 307 Ga. 689, 689, n. 2 (838 SE2d 314) (2020) (citation and punctuation omitted).

Viewed in the light most favorable to the verdict,[2] the record shows that one afternoon in April 2017, officers were dispatched regarding a domestic dispute between Nichols and his girlfriend. A sergeant located Nichols in the woods behind the girlfriend's house. While they were talking, Nichols aimed a revolver at the sergeant and fired. Nichols and the sergeant then exchanged multiple shots, and at one point, Nichols was shot. Although Nichols fell to the ground, he rolled on his stomach and continued to point his gun at the sergeant, saying, "kill me." Nichols was eventually disarmed and arrested. The officer who searched Nichols incident to the arrest found a sunglasses case in his pocket containing methamphetamine, hydrocodone, and alprazolam.

At trial, the State presented the foregoing evidence and played video of the entire shooting incident recorded by the sergeant's body camera. The jury found Nichols guilty of aggravated assault on a peace officer, two counts of possession of a firearm during the commission of a felony, two counts of obstruction of an officer, possession of methamphetamine, possession of hydrocodone, possession of a

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

Schedule IV controlled substance, possession of a firearm by a convicted felon, and possession of a firearm by a convicted felon during a crime.[3] This appeal followed.

In his sole enumeration on appeal, Nichols contends that the trial court erred by requiring him to be handcuffed during a portion of the trial. We disagree.

The record shows that at the beginning of the third day of trial, the trial court held a bench conference outside the presence of the jury concerning a statement that Nichols had made to a deputy. The court questioned the deputy, who confirmed that Nichols had commented to him: "If I act out in court, just shoot me in the head." The court then noted that in determining how to address the comment, it was considering the charges against Nichols – which included aggravated assault against an officer – as well as "some of the upset that occurred . . . with counsel" at a previous proceeding, and Nichols's "agitation" during the presentation of evidence the day before. The trial court then announced that

> primarily, based on the comment made, I just have made a decision that Mr. Nichols should be restrained. I just do not want to take a chance at his acting out. If he was just making a comment, so be it. But I feel like

---

[3] The trial court granted a directed verdict of acquittal on one count of possession of marijuana, and the jury found Nichols not guilty on the counts related to the domestic dispute: one count of aggravated assault, possession of a firearm during the commission of a felony, terroristic threats, and simple battery.

the safety of the occupants of the courtroom, including [defense counsel] who are sitting right there at the table with him and the court reporter who is here in front of me, the safety of all of them outweighs any inconvenience to Mr. Nichols.

Following this ruling, the court instructed Nichols's counsel to "position a box or something in front of Mr. Nichols so that [the jury] do[es] not see the handcuffs," noting that if Nichols chose to put his hands above the table, "perhaps [the jury] could see the handcuffs. But if they remain in his lap as they are at the moment, there's no way the jury can see them at all." When defense counsel expressed concern that the jury might be able to see the handcuffs when Nichols stood, the following exchange took place:

> THE COURT: I'm going to find a file box or something to put in front of him so that if he stands up, that his wrists are not shown, and when he sits back down you can take the box down and he can keep his hands in his lap just like they are right now.
>
> THE BAILIFF: Your Honor, if I may say, he has a belly chain on right now. We can remove the belly chain where it's just the handcuffs. That way the orange belt is not visible.
>
> DEFENSE COUNSEL: What I was going to suggest is that we do ankle chains instead, because the jury definitely won't see that. I mean . . . I

can kind of move a little bit so he can be sitting closer to under the table. I can even move to the other side of the table. I just think that that would be a better –

THE COURT: I think – I've thought about this. If we can just position a file box or something in front of him, and [defense counsel], as soon as Mr. Nichols sits down, you can just remove the box, and there's no way they can see his wrists if he keeps them in his lap as he does right now.

The trial court then granted the defense's request to remove Nichols's belly chain, and gave counsel the option to stay seated when the jury came into the courtroom, "as a way to further conceal the restraints." Defense counsel responded that staying seated was preferable to standing, checked the view from the jury box to determine whether the jurors would be able to see the handcuffs, and then agreed to have the jury brought in to resume the trial.

"It is well established that no person should be tried while shackled except as a last resort." *Hill v. State*, 308 Ga. 638, 644 (2) (a) (842 SE2d 853) (2020) (punctuation omitted), citing *Illinois v. Allen*, 397 U. S. 337, 344 (I) (90 SCt 1057, 25 LE2d 353) (1970). Yet, "it is not necessarily an error of constitutional dimensions for an accused to appear in court wearing restraining devices[.]" *Collins v. State*, 164

Ga. App. 482, 484 (4) (297 SE2d 503) (1982). "[W]hen, in the discretion of the trial judge, the use of restraining devices . . . is necessary for preventing disruptive or dangerous behavior by the accused or for securing the safety of those in the courtroom, or of the general public, the decision to implement such measures is within the court's discretion." Id. On appeal, we review the trial court's decision to use restraining devices for an abuse of discretion, and we defer to a trial court's determinations about courtroom security as long as the record contains factual findings sufficient to justify the court's decision. See *Dennis v. State*, 170 Ga. App. 630, 632 (3) (317 SE2d 874) (1984). See also *Hill*, 308 Ga. at 644-645 (2) (a).

Here, the trial court made case-specific findings supporting its decision to handcuff Nichols. In doing so, it considered Nichols's comment in light of the charges against him and his previous behavior in the courtroom, and concluded that the comment caused "sufficient concern for the safety of everyone in the courtroom."[4]

_____

[4] Nichols asserts that he "was not given the opportunity to contest the validity, context, or meaning of the statement that formed the basis for his being shackled during trial." However, Nichols neither refuted the information on which the court acted nor requested a hearing, even though he had ample opportunity to do so while the parties discussed the logistics of concealing the handcuffs– a discussion that fills about six transcript pages. "In these circumstances, the defendant may not now complain that he was denied an adequate opportunity to be heard on the issue, or that his shackling was unnecessary." *Moon v. State*, 258 Ga. 748, 755 (12) (b) (375 SE2d 442) (1988) (punctuation omitted). Compare *Elledge v. Dugger*, 823 F2d 1439, 1450-

6

Moreover, the trial court also made efforts to balance its need for security measures with Nichols's constitutional rights by considering less visible measures, and even granted defense counsel's request to remove Nichols's belly chain to make the restraints less conspicuous. Although Nichols asserts on appeal that the handcuffs impeded his right to participate in the trial by restricting his ability to write notes or point at documents, there is no evidence of such in the record, and Nichols never raised that objection at trial. "A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Whatley v. State*, 270 Ga. 296, 302 (14) (509 SE2d 45) (1998) (punctuation omitted). Under these circumstances, we cannot say that the trial court abused its discretion. See *Potts v. State*, 259 Ga. 96, 100 (3) (376 SE2d 851) (1989) (no error where trial court determined from the information before it that shackling was justified).

Finally, even assuming that an unconstitutional shackling occurred, any error in the trial court's decision was harmless beyond a reasonable doubt. See *Hill*, 308 Ga. at 647 (2) (b) ("On direct appeal where unconstitutional shackling has occurred,

1452 (VI) (11th Cir. 1987) (defendant was denied a reasonable opportunity to challenge the information that served as the basis for the shackling where he asked permission to "say something" after the trial court announced its ruling, but the trial court denied the request).

7

there is a presumption of harm that can be overcome only upon a showing by the State that the shackling was harmless beyond a reasonable doubt.") (punctuation omitted). Here, in addition to the sergeant's testimony, the State presented video evidence of his encounter with Nichols, which occurred during daylight hours in clear weather. The evidence of Nichols's guilt was overwhelming. Further, there is no evidence that the jury ever saw Nichols's handcuffs, or even knew that he was restrained. Indeed, at the motion for new trial hearing, the State called two jurors as witnesses who both testified that they did not know that Nichols was handcuffed during trial, and that his being handcuffed never came up during jury deliberations.[5] Given the overwhelming evidence and the jury's lack of knowledge concerning Nichols's handcuffs, we cannot say that his shackling contributed to the verdict. Compare *Hill*, 308 Ga. at 647 (2) (b). Accordingly, any error in requiring Nichols to be handcuffed was harmless beyond a reasonable doubt. See *Council v. State*, 297 Ga. App. 96, 97 (676 SE2d 411) (2009) (finding the presence of restraints harmless beyond a reasonable doubt where there was no evidence that the jurors could see the

---

[5] Although Nichols argues on appeal that there "can be no guarantee . . . that none of the other ten jurors observed the shackles for the entire remainder of the trial," he "has the burden of showing the safety and security measures caused a violation of his constitutional rights." *Brown v. State*, 240 Ga. App. 321, 323 (2) (523 SE2d 333) (1999).

8

restraints from the jury box, and the trial court took measures to keep the jurors unaware of the restraints). See also *Morman v. State*, 356 Ga. App. 685, 691 (1) (848 SE2d 165) (2020) (appellant failed to show that his restraints interfered with his ability to receive a fair trial where the record showed that the restraints were not visible to the jury and the jury was not otherwise made aware of them).

*Judgment affirmed. Division Per Curiam. All Judges concur.*