## 42514. BECK v. THE STATE.
(340 SE2d 9)

GREGORY, Justice.

This is the second appearance of this death penalty case. Appellant, Eli Beck, was convicted in Bleckley County of malice murder, armed robbery and burglary and sentenced to death. On appeal, this court affirmed the convictions but reversed the death sentence. *Beck v. State*, 254 Ga. 51 (326 SE2d 465) (1985). The case was returned to Bleckley County for a retrial as to sentence, after which he was re-sentenced to death. He again appeals. We affirm.[1]

In the evening of January 16, 1984, Beck and co-defendant Ernest Ashley went to the home of their former employer, Emory

---

[1] The remittitur from this court was filed in Bleckley Superior Court on March 15, 1985. The case was retried as to sentence and Beck was re-sentenced to death on May 21, 1985. A notice of appeal was duly filed and the case was docketed in this court on July 17, 1985. Oral arguments were heard September 11, 1985.

Porter, Sr., in Cochran, Georgia. Mrs. Porter answered the door and talked to Beck, who asked if Mr. Porter was home. She called her husband to the door, and went to another room. When Mr. Porter arrived at the door, Beck rushed inside with a gun in his hand. Ashley followed. Mr. Porter called to his wife, instructing her to call the police. Either Beck or Ashley then shot Mr. Porter. Mrs. Porter fled the house.

Approximately $400 was taken from Mr. Porter. Beck and Ashley split the proceeds.

1. In his first two enumerations of error, Beck contends the trial court erred by refusing to allow defense counsel to ask prospective jurors on voir dire (1) what they felt the imposition of the death penalty accomplished, and (2) whether they felt they owed anything to the victim's family. We find no abuse of discretion in the court's conduct of the voir dire. *Henderson v. State*, 251 Ga. 398 (1) (306 SE2d 645) (1983); *Waters v. State*, 248 Ga. 355, 363 (3) (283 SE2d 238) (1981).

2. In his 5th enumeration of error, Beck complains of the court's refusal to grant a change of venue. The trial court, however, observing that only 10 of 73 prospective jurors (13.69%) had been excused for bias, prejudice or prior opinion, found as a fact that Beck could get a fair trial in Bleckley County. This finding is not manifestly erroneous. *Devier v. State*, 253 Ga. 604 (4) (323 SE2d 150) (1984).

3. Beck contends that his co-defendant, Ashley, was the actual killer. There is some support for this contention in the record. The prosecutor addressed this contention in his closing argument, as follows:

"The final fact in this little sequence of events. Whichever statement you listen to, one of the two men, while the other one is taking care of Mr. Porter, the other one goes after Mrs. Porter. Now, what do you reckon they were going to do when they got hold of Mrs. Porter? Apologize to her — for murdering and robbing her man? It's called witness elimination. And that was part of the plan. Neither man, Ernest Ashley or Eli Beck, has ever said that, because to say that would admit to you that they both planned to murder Emory and Neail Porter, and both have attempted to use the issue of who pulled the trigger as the big saving grace in the case. It don't matter. It don't matter at all who pulled the trigger. There's one gun. Maybe one of them fired all the shots. Maybe one of them fired one and another fired two. Maybe one of them fired neither, none of the shots. I'm telling you, under the law, they're both guilty of participating in the crime of murder. It was planned. Under Eli Beck's case, the best way you can look at it is he provided the gun. He took it in there, he cocked it over Emory Porter, Sr.'s face and then handed the gun to Ernest Ashley and said, 'You do the dirty deed.' Now, folks, I don't

care who pulled that trigger. That's the biggest smoke screen that's ever been pulled anywhere. They pulled the trigger. They pulled the trigger. Eli Beck and Ernest Ashley pulled the trigger and to who physically did it, if you want to determine that, get [a] coin out of your pocket when you go back in the jury room and you flip it. Heads, Eli did it and tails, Ernest did it. And that's all it's worth and that's all it matters, because together they participated in and killed Emory Porter, Sr. They would have killed Mrs. Neail Porter. The evidence is just absolutely clear on that point.

"Now, I'm not conceding to you, of course, that Eli Beck didn't pull the trigger. There's plenty of evidence that he did. There's also evidence that Ernest Ashley did it. They each say the other one did it. But again, that is simply not a legal issue that you need to decide. The evidence is clear that they, as co-defendants, as co-conspirators, as parties to the same crime, participated in and intended the death of Emory Porter, Sr. When this — When the prior jury in this case found Eli Beck guilty of malice murder they said he participated in it.

"There's two types of murder in this state, malice murder and felony murder. In malice murder you must intend the death of your victim or participated in it. In felony murder—

"MR. MULLIS: Your Honor, at this time I'm going to object to this line of argument. I don't feel this is proper for this jury's consideration. We have the prior verdict and this is not proper for the jury's consideration at this time. I would object for the record.

"THE COURT: Your objection's overruled. You may continue.

"MR. WIGGINS: In felony murder the other type of murder in this state, you do not have to intend the death of your victim. Simply that somehow during the commission of a felony crime, the victim dies. Eli Beck was found guilty of malice murder. He stands before you guilty of malice murder, which necessarily under the law means that he intended or participated in the murder of Emory Porter, Sr. So, the whole issue about who pulled the trigger is nothing but something designed to confuse you and to make you bite. And please, don't bite on this issue."

In his 3rd enumeration, Beck contends the court erred by overruling the objection. We disagree. The state's argument was not legally incorrect or otherwise improper. See *Williams v. State*, 250 Ga. 553 (6) (300 SE2d 301) (1983).

4. In his 4th enumeration, Beck contends the notice provisions of OCGA § 17-10-2 (a) were violated when a GBI agent testified for the first time at the resentencing trial. We find no error.

At the sentencing phase of a trial, "only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." OCGA § 17-10-2 (a). In this case, the name of the witness was on a list of witnesses furnished to Beck by the state

486

prior to trial. The witness testified to the same evidence presented by another GBI agent at the previous trial, who was unavailable for the second trial due to illness. The notice provisions of OCGA § 17-10-2 were not violated. Cf. *Alderman v. State*, 254 Ga. 206 (8) (327 SE2d 168) (1985).

5. The jury found that the offense of murder was committed while Beck was engaged in the commission of the offenses of armed robbery and burglary. OCGA § 17-10-30 (b) (2). The evidence supports the jury's findings. OCGA § 17-10-35 (c) (2).

6. Co-defendant Ashley did not admit his participation in the crime until he pled guilty after the state offered a life sentence in exchange for a guilty plea. Beck confessed to his participation in the crime. Moreover, the murder weapon and some of the money taken in the crime were found in Beck's home.

Beck claims that Ashley was the actual killer; however, Ashley points the finger at Beck. The evidence is inconclusive.

It is clear, however, that Beck and Ashley entered the victims' home intending to kill. Not only were they armed, but, significantly, they wore socks on their hands so there would be no fingerprints, but they did *not* wear masks, notwithstanding that both victims knew Beck and Ashley.

In view of the extent of Beck's participation in the crime, and *his* culpability, his death sentence is not disproportionate to the life sentence that Ashley received only because the state did not have as strong a case against him as it did against Beck. Compare *Hall v. State*, 241 Ga. 252 (8) (244 SE2d 833) (1978).

Moreover, Beck's death sentence is neither excessive nor disproportionate to sentences imposed generally, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3).

7. We do not find that the sentence of death was imposed under the influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 4, 1986.

*Fitzpatrick & Mullis, W. Dennis Mullis,* for appellant.

*James L. Wiggins, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Mincey v. State*, 251 Ga. 255 (304 SE2d

882) (1983); *Jones v. State*, 249 Ga. 605 (293 SE2d 708) (1982); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Jones v. State*, 243 Ga. 820 (256 SE2d 907) (1979); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Corn v. State*, 240 Ga. 130 (240 SE2d 694) (1977); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976); *Mitchell v. State*, 234 Ga. 160 (214 SE2d 900) (1975); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975).