## 44327. HARRISON v. THE STATE.
(361 SE2d 149)

MARSHALL, Chief Justice.

This is a death penalty case, here on direct appeal, for review under the Unified Appeal Procedure, 252 Ga. A-13 et seq., and for a sentence review pursuant to OCGA § 17-10-35.

### Facts

The victim, Reggie Dorsey, a companion, Marvin Mize, and a number of other persons spent the early evening hours of March 17, 1984, at the home of Kenneth Watkins. All but Dorsey and Mize left to go to a nightclub in Gainesville. After they left, Dorsey and Mize

---

prepared to leave when they were approached by two males who were later identified as Aden Harrison, Jr., and Johnny Ware Kimbrough. Harrison, the defendant in this case, carried a shotgun. Dorsey and Mize were forced to lie face down on the ground. Their money was taken. Then, Mize testified, "I heard a shot and then I heard something say 'click, click' and then . . . [the other] guy said, hold it, let's go."

Meanwhile, Kenneth Watkins realized that he had left his identification at home, and he and the others returned in time to observe Mize in a prone position, and two men running away. Mize told Watkins that he and Dorsey had been robbed, and that Dorsey had been shot.

The two robbers joined another man in an automobile and sped away. Watkins and his group chased after them in their car.

They got close enough to get the license number of the fleeing automobile. One of its occupants pointed a shotgun at them and they broke off their pursuit, and returned to Watkins' residence, where a Hall County sheriff's deputy had already been summoned.

The license number was broadcast, and a few minutes later an automobile with that tag number was clocked on radar by a state patrolman at 74 m.p.h.

The car was stopped and its occupants, Harrison, Kimbrough, and Lester Shields, were arrested. Bloodstains were observed on the right door handle of the car, and a pump shotgun with a live shell jammed in its chamber was recovered from its interior. The gun was identified by a ballistics examination and comparison as the murder weapon.

Dorsey died as the result of a shotgun blast to the head that fractured all of the bones of his face.

Harrison was convicted of malice murder, armed robbery, and attempted armed robbery. The evidence supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

### *Enumerations of Error*

1. Co-defendants Kimbrough and Shields were tried before Harrison. Shields pleaded guilty to voluntary manslaughter during his trial, and Kimbrough was convicted of murder and sentenced to life imprisonment.

Kimbrough testified at his trial that Harrison killed Dorsey. However, when he was called by the state as its first witness at the sentencing phase of *this* trial, he testified that Shields, not Harrison, was the actual killer. The state responded by introducing in evidence Kimbrough's previous testimony that Harrison was the triggerman.

Harrison argues that since Kimbrough obviously lied either at

this trial or in the previous one, the state improperly obtained a death sentence by the use of perjured testimony. See *Fugitt v. State*, 251 Ga. 451 (1) (307 SE2d 471) (1983). Accordingly, Harrison argues, his death sentence must be reversed.

We disagree. Kimbrough's previous testimony is consistent with other evidence in this case. The district attorney had reason to believe that the prior testimony was true and to attempt to elicit that testimony at this trial. When Kimbrough tried to blame Shields, whose case had been disposed of by this time, in an attempt to help Harrison, whose case was still pending, the district attorney had the responsibility and the duty to correct what he reasonably believed to be false and to present the truth. *Napue v. Illinois*, 360 U. S. 264, 270 (79 SC 1173, 3 LE2d 1217) (1959).

The jury had the benefit of Kimbrough's present testimony and his previous inconsistent testimony. Neither was kept from the jury, and the jury properly was given the opportunity to decide for itself which version was the truth, and which the fabrication. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982).

2. Harrison's trial began two years to the day after he committed the crime. He contends the trial court erred by not granting his motion to dismiss for failure to grant him a speedy trial.

We note that the defendant did not file a demand for trial pursuant to OCGA § 17-7-171. His claim here rests upon the speedy-trial provisions of the Sixth Amendment to the Federal Constitution, and of Art. I, Sec. I, Par. XI of the Georgia Constitution.

The appropriate analytical framework here is that set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). *Perry v. Mitchell*, 253 Ga. 593, 594 (322 SE2d 273) (1984).

*Barker v. Wingo*, supra, identifies four factors relevant to this kind of claim, viz: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant." *Perry v. Mitchell*, supra.

Although the delay in this case was lengthy, it "does not . . . evidence that most serious abuse — 'A deliberate attempt to delay the trial in order to hamper the defense . . .' *Barker v. Wingo*, supra, 407 U. S. at 531." *Perry v. Mitchell*, supra at 594-95.

Since the state sought the death penalty against two of the three co-defendants, it was required to try each of the three separately. OCGA § 17-8-4. Some of the delay here was occasioned by the necessity for separate trials of Harrison's two co-defendants. Moreover, the state had planned to call co-defendant Shields as a witness at Harrison's trial, but he escaped. The state hoped that he would be recaptured in time to testify at Harrison's trial, but to no avail.

Thus, as the trial court pointed out, if anyone was prejudiced by the delay here, it was the state.

Since the defendant did not assert his right to a speedy trial until just before he was tried, the trial court did not err by denying the defendant's motion to dismiss for failure to grant him a speedy trial.

3. Harrison contends that the trial court erred by refusing to allow him to reveal to the jury at the guilt/innocence phase of the trial that co-defendant Shields had been allowed to plead guilty to voluntary manslaughter in exchange for his testimony in the Kimbrough case.

If Shields had testified in the instant case, his conviction, and any plea agreement relating thereto, would have been a relevant subject of cross-examination. *Owens v. State*, 251 Ga. 313 (1) (305 SE2d 102) (1983). However, although Shields did testify at Kimbrough's trial, he escaped prior to Harrison's trial, and was unavailable as a witness. As a result, there was no testimony by Shields to discredit.

This is not a case in which an aider and abettor is on trial and the principal has been acquitted. See *White v. State*, 257 Ga. 236 (356 SE2d 875) (1987). The state did not contend here that Shields was the principal and that Harrison was guilty only as a party to a crime committed by Shields. Hence, proof of Shields' guilt was not a necessary element of the state's case against Harrison. Moreover, Shields was not acquitted. He was merely allowed to enter a guilty plea to the lesser included offense of voluntary manslaughter, and to armed robbery and attempted armed robbery.

Harrison was allowed to reveal the disposition of Shields' case at the sentencing phase of the trial. The trial court did not err by refusing to allow him to do so at the guilt/innocence phase of the trial.

4. The trial court did not err by refusing to give the defendant's requests to charge on voluntary and involuntary manslaughter, and accident or misfortune. There was no evidence to support these requests. Nor did the trial court err by failing to give other charges in the exact language requested, where the court's charge substantially and adequately covered the principles contained in these requests. *Edwards v. State*, 255 Ga. 149 (1) (335 SE2d 869) (1985).

5. "The question whether a defendant is someone whose probable future behavior indicates a need for the most effective means of incapacitation, i.e., the death penalty, is not constitutionally irrelevant. [Cits.] Arguments addressing this question are not improper if based on evidence adduced at trial. [Cits.]" *Ross v. State*, 254 Ga. 22, 34 (7) (326 SE2d 194) (1985). It is proper to remind the jury of "the possible consequences" of its verdict. *Walker v. State*, 254 Ga. 149, 158 (19) (327 SE2d 475) (1985).

Contrary to the defendant's fifth enumeration of error, the prosecutor did not argue facts not in evidence concerning co-defendant Kimbrough's prior record, nor did the prosecutor err by discussing the issue of the defendant's probable future dangerousness.

*Sentence Review*

6. The jury found the existence of three statutory aggravating circumstances: (1) The offense of murder was committed while the defendant was engaged in the commission of an armed robbery (see OCGA § 17-10-30 (b) (2)); (2) The offense of murder was committed by the defendant for the purpose of receiving money (see OCGA § 17-10-30 (b) (4)); and (3) "This offense of murder and armed robbery was committed by the defendant knowingly and created a great risk of death to more than one person in a public place by means of a weapon, to wit: a shotgun, which would normally be hazardous to the lives of more than one person." See OCGA § 17-10-30 (b) (3).

The first two findings are proper and supported by the evidence. OCGA § 17-10-35 (c) (2). The third finding we disregard for three reasons.

First, it does not state, as the statute requires, that the defendant *knowingly* created a great risk of death to more than one person in a public place; the verdict merely states that the defendant *knowingly* committed the crimes of murder and armed robbery.

Second, inasmuch as the death penalty was being sought on the murder count, the reference to the offense of armed robbery was superfluous and should have been omitted. (The jury found this circumstance in the form in which it was submitted to them, by circling the appropriate area on the verdict form.)

Finally, and most importantly, this is not the kind of case to which the § b (3) circumstance applies. Harrison did not by his act of shooting Reggie Dorsey create a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person. See *Pope v. State*, 256 Ga. 195 (18) (345 SE2d 831) (1986); *Phillips v. State*, 250 Ga. 336 (5) (297 SE2d 217) (1982).

The jury's § b (3) finding "does not suffice to authorize the imposition of a death sentence." *Davis v. State*, 255 Ga. 588, 595 (3) (340 SE2d 862) (1986). However, the jury's other two findings were sufficient to allow the case to "pass the second plane into that area in which the death penalty is authorized." *Zant v. Stephens*, 250 Ga. 97, 100 (297 SE2d 1) (1982). Once beyond this plane, the jury was entitled to consider all the circumstances of this case, including the defendant's extensive prior record — five convictions for motor vehicle theft and one for forgery — and that the defendant killed one person during the commission of an armed robbery and might have killed a second had his gun not jammed.

We do not find that the sentence of death was imposed here under the impermissible influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (2).

7. The sentence of death imposed in this case is neither excessive nor disproportionate to sentences imposed in similar cases listed in the Appendix, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The judgment is therefore affirmed.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Beck v. State*, 255 Ga. 483 (340 SE2d 9) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Jones v. State*, 249 Ga. 605 (293 SE2d 708) (1982); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Jones v. State*, 243 Ga. 820 (256 SE2d 907) (1979); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Corn v. State*, 240 Ga. 130 (240 SE2d 694) (1977); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976); *Mitchell v. State*, 234 Ga. 160 (214 SE2d 900) (1975); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975).

DECIDED OCTOBER 7, 1987 —
RECONSIDERATION DENIED OCTOBER 28, 1987.

*William I. Sykes, Jr.,* for appellant.
*C. Andrew Fuller, District Attorney, Daniel A. Summer, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.