46850. MILLER v. THE STATE.
(380 SE2d 690)

SMITH, Justice.

Michael Miller was convicted by a jury in Walton County of murder and armed robbery. He was sentenced to death for the murder. We affirm.[1]

On the evening of October 27, 1987, Miller and Darrell Cook were riding around Atlanta in a van Cook had stolen, looking for money. They kidnapped Jimmy Evans in the parking lot of a bar, tied him up, and forced him to tell them where he lived. They then proceeded to his apartment, which they entered using his key. They tied up his roommate, and stole several items from the apartment. Evans was driven to a deserted area, where he was thrown out of the van, and Miller urinated on him.

Leaving Evans by the side of the road, Miller and Cook met with Teresa Okoia. The three of them drove to Covington, where they spent the day buying drugs. They were returning on Miller-Bottom Road in the early morning of October 29 when they decided to stop the first car they saw and rob it.

That car was driven by Larry Sneed. Miller shot several times at his car with a .22 rifle. When Sneed put on his brakes, his car was struck from the rear by the van, and left the road. Sneed exited his

---

[1] The crime was committed on October 29, 1987. Indictments were returned on November 16, 1987, and the case was tried November 15 and 16, 1988. A motion for new trial was filed December 21, 1988 and denied February 24, 1989. The case was docketed in this court March 30, 1989. Oral arguments were heard June 6, 1989.

car and ran. Miller shot him in the back and went through his pockets while Okoia searched the car. They got Sneed's wallet, a cooler, a check, and several credit cards. When the porchlight of a nearby house came on, they drove away. Sneed bled to death.

On November 11, 1987, Miller, who was in jail on an unrelated charge, told the police he had information about the robbery and shooting of Sneed. Miller said he was not involved but had heard about it from "Monte" and Cook. However, Miller gave the officers so many details of the crime they suspected he was involved. Asked if he would take a polygraph examination, Miller told the officers it was not necessary as he was going to tell them about it. He now admitted that he was with Cook and Monte, but claimed he did not do anything except observe.

On November 24, 1987 Miller was given a polygraph examination. Before the test, Miller read and signed a waiver of his *Miranda* rights and also signed a form stipulating that the results would be admissible at trial. The examiner testified at trial that, in his opinion, Miller was untruthful when he denied shooting Larry Sneed.

1. On voir dire, the trial judge asked the prospective jurors if any of them were conscientiously opposed to the death penalty. None of the jurors responded. The district attorney introduced himself and again asked if any of them were conscientiously opposed to the death penalty. Again, no one responded. However, after further questioning, one prospective juror indicated she was opposed to the death penalty. Both counsel agreed to excuse her. The district attorney then requested that the question be asked to each juror individually. Over objection, the court granted the state's request. Miller contends that individually questioning all 71 prospective jurors about the death penalty put undue emphasis on it and created in the jurors' minds the idea that the death penalty was mandatory and life imprisonment should not be considered.

Death-qualification of prospective jurors is not improper. *Pope v. State*, 256 Ga. 195 (7) (345 SE2d 831) (1986). Moreover, "[i]n cases in which the death penalty is sought, the trial judge shall address all *Witherspoon* and reverse *Witherspoon* questions to prospective jurors individually." Uniform Superior Court Rule 10.1. The trial judge committed no error when he death-qualified each juror.

2. "[U]pon an express stipulation of the parties that they shall be admissible, the results of a lie detector test shall be admissible as evidence." *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977). Miller contends that since the district attorney did not personally sign the polygraph stipulation, it is not binding, and the test results should have been excluded from the evidence. However, although the district attorney did not sign the stipulation himself, he authorized Investigator Yarbrough to administer a polygraph examination and to obtain a

stipulation from Miller to use the results of the examination at trial. Once Yarbrough was expressly authorized to obtain a stipulation, he was acting as an agent of the district attorney. Thus he had the power to enter into the stipulation. We hold there was an "express stipulation by the state and the accused." *Willis v. State*, 249 Ga. 261 (290 SE2d 87) (1982). The trial court did not err by allowing the test results in evidence.

3. The jury found the presence of two statutory aggravating circumstances to support the death sentence for the murder of Larry Sneed: (1) "The murder was committed during the course of another capital felony, to-wit, armed robbery," and (2) "The murder was committed for the purpose of receiving money and other property of monetary value, to-wit, a credit card." See OCGA § 17-10-30 (b) (2) and (b) (4). The evidence supports these findings. OCGA § 17-10-35 (c) (2).

4. The death sentence was not imposed under the impermissible influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1). Nor is it excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case.

*Judgment affirmed. All the Justices concur, except Weltner, J., not participating.*

APPENDIX.

*Lee v. State*, 258 Ga. 82 (365 SE2d 99) (1988); *Frazier v. State*, 257 Ga. 690 (362 SE2d 351) (1987); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Finney v. State*, 253 Ga. 346 (320 SE2d 147) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Putman v. State*, 251 Ga. 605 (308 SE2d 145) (1983); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Wilson v. State*, 250 Ga. 630 (300 SE2d 640) (1983); *Rivers v. State*, 250 Ga. 288 (298 SE2d 10) (1982); *Jones v. State*, 249 Ga. 605 (293 SE2d 708) (1982); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Jones v. State*, 243 Ga. 820 (256 SE2d 907) (1979); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Corn v. State*, 240 Ga. 130 (240 SE2d 694) (1977); *Peek v. State*, 239 Ga. 422 (238 SE2d 12) (1977); *Birt v. State*, 236 Ga. 815 (225 SE2d 248) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976);

*Mitchell v. State*, 234 Ga. 160 (214 SE2d 900) (1975); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975); *Gregg v. State*, 233 Ga. 117 (210 SE2d 659) (1974).

DECIDED JUNE 22, 1989.

*Joseph S. Peeples, Michael R. Jones*, for appellant.
*John M. Ott, District Attorney, Michael J. Bowers, Attorney General, Andrew S. Ree*, for appellee.