### S90A0930. JOWERS v. THE STATE.
(396 SE2d 891)

FLETCHER, Justice.

Donaldson Stanley Jowers was convicted of the murder of Tawana Jean Burnham and given a sentence of life imprisonment.[1]

Jowers and Burnham had lived together in Coffee County, Georgia for approximately three to four years prior to her death. Their relationship had been turbulent, and Jowers had physically abused her and threatened to kill her on several occasions.

One week prior to her death, Burnham entered a substance abuse center in Waycross because of alcohol and drug problems. When she entered that facility, she was "beaten up pretty badly." Several days later, she returned to Coffee County. After spending most of the evening drinking at a lounge, she spent the night of April 5, 1988, at an adjoining motel.

At Burnham's request the next morning a friend, John Fambrough, drove her to Jowers' residence. In transit they stopped at a liquor store where she bought, and later consumed, a pint of Vodka. Upon arriving at the residence later that morning, Jowers and Burnham began to argue, and Fambrough left.

As a result of Fambrough's telephone call relating concern for Burnham's safety, a sheriff's investigator went to Jowers' residence, but left when Burnham appeared at the door and stated "everything was okay." Later that evening, two telephone calls to the sheriff's office from Burnham relating her fear of Jowers resulted in further investigation which produced no evidence of harm to Burnham.

On the evening of April 7, Jowers summoned an investigator and emergency medical technicians to his residence. When they arrived, Burnham was in the bedroom lying on the bed in a fetal position, and Jowers was in another room. Burnham had sustained one gunshot wound, which passed through her right breast to her right lung. She was alive, but died a few hours later from a hemorrhage in the right lung cavity.

---

[1] The decedent's death occurred on April 7, 1988. Appellant was indicted of malice murder on August 18, 1988. He entered a plea of not guilty on September 1, 1988. His trial began on October 31, 1989, and ended on November 1, 1989. He filed a motion for new trial on November 10, 1989, which was amended on February 23, 1990. The motion for new trial was denied on February 27, 1990. His notice of appeal was filed on March 28, 1990. The appeal was docketed in this Court on April 12, 1990. The case was orally argued on June 5, 1990.

Next to Burnham's body on the bed, investigators found Jowers' .357 magnum weapon. Jowers stated to law enforcement authorities, and testified at trial, that Burnham had committed suicide and that he did not shoot her.

The GBI compiled two official reports, one dated June 30, 1988, and the other dated October 18, 1989. These reports contain three items relevant to our decision in this case: (1) Chemical and toxicological tests showing alcohol and other drugs in the victim's blood at the time of her death; (2) microanalytical tests concerning gunshot residue produced by the firing of the .357 magnum which caused the victim's death; and (3) ballistics examinations in regard to the distance of the gun from the deceased when the weapon was discharged.

(1) Both GBI reports state that at the time of her death, the decedent's blood tested positive for .21 grams percent of ethyl alcohol, for "16 mcg per dl" of benzoyledgonine (a metabolite of cocaine), and for ".11 mg per dl" of phenobarbital. This evidence concerns the decedent's mental state at the time of her death, which is relevant to the question of whether she was predisposed to take her own life.

(2) No gunshot residue was found on the decedent's hands. However, the reports state that this did not "eliminate the possibility" that the decedent could have discharged the weapon. The October 18th report states that in discharging the weapon "under laboratory conditions," atomic absorption analysis of test wipings so produced failed to reveal the presence of elements characteristic of gunshot residue.

(3) It is stated in the autopsy report, "No powder staining is present around the wound. . . . The entry wound is consistent with a tumbling bullet. There is no powder in the wound track." The consistency of the wound with a "tumbling bullet" means that the gun inflicting the fatal wound was fired at some distance from the decedent, and thus could not have been self-inflicted.

However, both GBI reports state that an examination of a pink shirt worn by the decedent at the time of her death did reveal the presence of gunpowder around the gunshot hole of entry in the right front breast area. On this basis, the October 18th report concludes that, "there is a pressed contact type gun shot hole of entry in the front of the pink shirt." A "contact wound" means that the gun was pressed against the decedent's shirt when the fatal shot was fired; under this theory, the wound could have been self-inflicted or the weapon could have been fired by another individual. The foregoing conclusion in the October 18th report is not contained in the June 30th report. Both reports also state that no legible fingerprints were found on the weapon.

Notwithstanding the contents of these scientific reports, which were all produced to him, defense counsel allowed the prosecution to

advance arguments and present evidence which was not refuted to the effect that the decedent had not been drinking at the time of her death and that the absence of gunshot residue on the victim's hands, as well as the consistency of the wound with a tumbling bullet, indicated that the fatal wound was not self-inflicted.

Appellant contends that his conviction and sentence should be set aside on grounds of prosecutorial misconduct and ineffective assistance of trial counsel.

As to his prosecutorial misconduct claim, appellant, citing *Napue v. Illinois*, 360 U. S. 264 (79 SC 1173, 3 LE2d 1217) (1959); *Miller v. Pate*, 386 U. S. 1 (87 SC 785, 17 LE2d 690) (1967); and *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972), argues that his due-process rights were violated insofar as the prosecution presented its case to the jury in a manner inconsistent with the findings in the GBI reports.

As to his ineffective assistance claim,[2] Jowers argues that trial counsel was constitutionally ineffective as he failed to adequately investigate the case and failed to utilize the contents of the GBI reports, or to subpoena the individuals who had conducted the various tests referred to therein, in support of his defense.

We reverse due to ineffective assistance of trial counsel; therefore, we do not reach appellant's prosecutorial misconduct claim.

1. This case is wholly dependent upon circumstantial evidence. If the proved facts do not exclude every other reasonable hypothesis save that of guilt — as required by OCGA § 24-4-6, see, e.g., *Anglin v. State*, 244 Ga. 1 (257 SE2d 513) (1979); *Bragg v. State*, 175 Ga. App. 640 (1) (334 SE2d 184) (1985) — then a new trial is barred as a matter of double jeopardy. *Marchman v. State*, 234 Ga. 40 (215 SE2d 467) (1975); see generally *Brown v. State*, 260 Ga. 153, fn. 2 (391 SE2d 108) (1990). We hold that in this case, as in others, the sufficiency of the circumstantial evidence is primarily a question for determination by the jury. See, e.g., *Bird v. State*, 178 Ga. App. 687 (344 SE2d 468) (1986) and cits. Cf. *Smith v. State*, 188 Ga. App. 415 (373 SE2d 97) (1988). The circumstantial evidence is likewise sufficient to support the verdict under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), establishes the benchmarks for determining whether trial counsel's representation of a defendant in a criminal case was so deficient as to result in the denial of the defendant's right

---

[2] Appellate counsel began representing appellant after trial counsel had filed a motion for new trial. Appellate counsel amended the motion for new trial by adding the claim of ineffective assistance of trial counsel. After an evidentiary hearing, the trial court denied the motion. Compare *Johnson v. State*, 259 Ga. 428 (3) (383 SE2d 115) (1989) and cits.

to assistance of counsel under the Sixth Amendment. *Strickland* requires a convicted defendant complaining of ineffective assistance of counsel to make a two-part showing.

Under *Strickland's* first component, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." 466 U. S. at 688. In regard to this component, *Strickland* emphasizes that counsel's "overarching duty" is "to advocate the defendant's cause . . . to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Id. at 688. In determining . whether the defendant has established that counsel's performance was constitutionally deficient, the court should keep in mind that "counsel's function . . . is to make the adversarial testing process work in the particular case." Id. at 690. "[C]ounsel has a duty to make reasonable investigations." Id. at 691. Moreover, the defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, citing *Michel v. Louisiana*, 350 U. S. 91, 101 (76 SC 158, 164, 100 LE 83) (1955).

The record reflects that counsel did not "adequately investigate the case," that he did not "make the adversarial testing process work," and that his omissions in this regard cannot be considered "sound trial strategy." Key ingredients of appellant's sole defense found support in the state's scientific reports, and counsel failed to present such evidence to the jury; therefore, Jowers has made the first showing required under the *Strickland* two-part test.

The second component of the *Strickland* test requires the defendant to show prejudice. "Concerning the prejudice component, the Court [in *Strickland*] held that the defendant must show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different (104 SC 2068)." *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985).

Adjudged under the foregoing criteria, we hold that the omitted evidence in this case is of sufficient probative value to require a new trial.

3. We have reviewed the remaining enumerated errors and find them to be without merit.

*Judgment reversed. All the Justices concur, except Benham, J., who dissents.*

DECIDED OCTOBER 18, 1990.

*Walters, Davis. Smith, Meeks & Pittman, Thomas H. Pittman,* for appellant.

*Harry D. Dixon, Jr., District Attorney, Albert H. Tester, Assis-*

*tant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf,* for appellee.