## S94P1145. HAMMOND v. THE STATE.

(452 SE2d 745)

FLETCHER, Justice.

Emmanuel Hammond was convicted of the malice murder, armed robbery and kidnapping of Julie Love. He was sentenced to death for the conviction of murder. On appeal, we found no reversible error in the issues raised by Hammond, but because we "perceive[d] a possible issue as to ineffectiveness of counsel," *Hammond v. State,* 260 Ga. 591, 599 (398 SE2d 168) (1990), we remanded the case to the trial court to afford Hammond the opportunity to litigate this issue. We held that, at the conclusion of those proceedings, the case would be returned to this court "for review of the proceedings on remand and for the statutory sentence review, unless the proceedings on remand obviate the need for further appellate review." Id. at 600.

The trial court appointed new counsel to represent Hammond. Following a lengthy hearing on the issue of ineffectiveness, the trial court entered a 67-page order in which it concluded that Hammond's trial counsel rendered reasonably effective assistance throughout all phases of trial. The trial court additionally concluded that the evidence of Hammond's guilt was so overwhelming that any deficiencies in trial counsel's performance did not affect the jury's decision in either phase of trial. We affirm.

1. At the conclusion of the sentencing phase of trial, the prosecutor argued to the jury that Hammond should not be given a life sentence because "[t]here is no life without parole in Georgia. So one day he will be a free man." Hammond's trial counsel immediately objected to this improper argument. The trial court sustained the objection and instructed the jury that the prosecutor's statement was incorrect and should be disregarded. On direct appeal to this court Hammond argued that his sentence should be reversed based on OCGA § 17-8-76, which provides, inter alia, that if the state argues to the jury that the defendant may not be required to serve his entire sentence because of the possibility of parole, the defendant is entitled

to a mistrial upon request to the trial court to declare one. We held that a mistrial is not required by this Code section absent a request, and that the trial court in this case did not err in limiting relief to that sought by Hammond's trial counsel. *Hammond*, 260 Ga. at 599.

Hammond now argues that trial counsel was ineffective in failing to move for a mistrial. The Supreme Court has held that in giving meaning to the Sixth Amendment right to effective assistance of counsel, the courts

> must take its purpose — to ensure a fair trial — as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland v. Washington*, 466 U. S. 668, 686 (104 SC 2052, 80 LE2d 674) (1984).

To prove a claim of ineffective assistance, a defendant must satisfy two burdens. He must first show that counsel's performance was deficient; that is, he must demonstrate that counsel failed to function as "the 'counsel' guaranteed by the Sixth Amendment." Second, the defendant is required to show that he was prejudiced by counsel's deficient performance; that is, he must show that "counsel made errors so serious . . . as to deprive the defendant of a fair trial." Id. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.

> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

(Citation omitted.) Id. at 693.

We need not decide whether in failing to move for a mistrial trial counsel's performance was deficient, because we conclude that this error did not undermine the reliability of the result of the sentencing trial.[1] While it is true, as Hammond vigorously argues, that a granted

---

[1] [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

motion for mistrial would have resulted in another jury deciding his sentence, it is speculative at best to assert that a different verdict would have been reached. The evidence against Hammond, offered both during the guilt/innocence phase and in aggravation during the sentencing phase, was overwhelming. Trial counsel did object to the prosecutor's impermissible argument and the trial court instructed the jury that the prosecutor's statement was incorrect, improper, and should be disregarded. Trial counsel's failure to additionally move for a mistrial did not deprive Hammond of a fair sentencing trial; it merely deprived him of a sentencing determination by 12 different persons who may or may not have reached the same verdict based on the evidence presented. In fact, trial counsel testified to his theory that it was important that the same jury decide the issues of guilt/innocence and sentencing because he was convinced there was evidence presented in the guilt/innocence phase that cast doubt on whether Hammond had actually committed the crimes in question and the sentencing jury should have the benefit of this "residual doubt." We conclude that Hammond has not met his burden of showing that had a motion for mistrial been made "the decision reached would reasonably likely have been different." *Strickland*, 466 U. S. at 696.

2. Hammond is correct in arguing that an "actual conflict of interest adversely affecting a lawyer's performance renders assistance ineffective." *Strickland*, 466 U. S. at 686. However, Hammond has failed to demonstrate either that there was an actual conflict of interest created by the "media rights" contract he allegedly entered into with trial counsel or that this conflict adversely affected trial counsel's performance.

3. Hammond argues that trial counsel was ineffective in eliciting "bad act" and "bad character" testimony about Hammond from various witnesses at trial.

(a) Hammond complains primarily of a tape-recorded statement by Janice Weldon, who had been with Hammond at the time Julie Love was kidnapped, in which Weldon accused Hammond of committing another murder sometime after the murder of Love. At the time of admission, trial counsel stated that he was offering Weldon's statement because it was uncorroborated by any other evidence and, therefore, cast doubt on her credibility. Trial counsel took the position that the tape-recorded statement was impeaching of Weldon's testimony implicating Hammond in the Love murder, and the trial court instructed the jury to consider the tape-recorded statement for im-

---

*Strickland*, 466 U. S. at 697. See also *Lajara v. State*, 263 Ga. 438, 440 (435 SE2d 600) (1993); *Jowers v. State*, 260 Ga. 459, 462 (396 SE2d 891) (1990).

peachment purposes only.

It is not the duty of the courts to second-guess trial counsel's choice of strategy. The fact that other experienced trial attorneys testified that this tactic hindered rather than aided Hammond's defense has no bearing on the reasonableness of trial counsel's tactics. *Jefferson v. Zant*, 263 Ga. 316, 318 (431 SE2d 110) (1993). That trial counsel

> made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.

*Van Alstine v. State*, 263 Ga. 1, 5 (426 SE2d 360) (1993), quoting *Solomon v. State*, 247 Ga. 27, 29 (277 SE2d 1) (1981).

(b) Hammond cites no authority showing that the similar transactions evidence offered against him was inadmissible. Further, he has failed to show that trial counsel's cross-examination of the witnesses testifying to similar transactions was so defective as to deprive him of a fair trial. *Strickland*, 466 U. S. at 686.

Prior to trial, trial counsel moved to suppress Hammond's juvenile court record. The trial court granted the motion in part, resulting in the exclusion from evidence of a number of juvenile offenses in which Hammond had not been represented by counsel. Testimony pertaining to one juvenile offense in which Hammond did have the benefit of an attorney was admitted during the sentencing phase as a similar transaction. Hammond now argues that trial counsel was ineffective in failing to object to its admission. However, such evidence is admissible during the sentencing phase. *Hammond*, 260 Ga. at 598. Consequently, trial counsel's failure to object cannot be deemed deficient in this regard.

4. Hammond maintains that trial counsel was ineffective in failing to adequately investigate and present evidence at both phases of trial on the issue of his mental health.

(a) Trial counsel was not ineffective merely because he initially requested a mental health examination by a state doctor. *Hance v. Kemp*, 258 Ga. 649, 657 (373 SE2d 184) (1988).

(b) Hammond has not shown how he was prejudiced by trial counsel's failure to secure a mental evaluation prior to the original trial date. The trial court's finding that an extensive and complete mental health examination was conducted by three competent, independent mental health professionals prior to the commencement of trial is supported by the record. These experts concluded that Hammond was competent to stand trial, had no significant mental illness

problems, and was not mentally retarded. The examining psychiatrist concluded that Hammond is

> a significantly disturbed individual, characterized by depression, anxiety, suspiciousness, impulsiveness, resentment toward authority, shallow relationships, somatization of feelings and a tendency toward grandiosity. This pattern is most likened to a personality disorder.

The psychiatrist testified on remand that he did not find any possible mitigating factors other than this personality disorder. At the remand hearing, trial counsel testified that he determined not to use the psychiatrist's findings because they would not necessarily mitigate Hammond's claim that he did not commit the crime, and further, the characteristics of Hammond's personality disorder might not be attractive to the jury.

Hammond argues that trial counsel was ineffective in failing to further investigate the issue of his mental health, but does not demonstrate how a further investigation would have benefitted his case. His claim that further tests would have been beneficial is speculative. Likewise, he fails to show that any additional participation or preparation by trial counsel in the mental health examination would have changed the results of the evaluation or the outcome of either phase of trial. Given the psychiatrist's findings, even if trial counsel was "completely uninformed about the mental health issues in this case until after trial began," as Hammond alleges, the prejudice prong of the *Strickland v. Washington* test has not been satisfied.

> Although other attorneys might have explored the mental issue further, we cannot conclude that the investigation by and tactical judgment of [Hammond's attorney] was outside the wide range of reasonably effective assistance.

*Jefferson*, 263 Ga. at 320. Further, Hammond

> has not demonstrated a reasonable probability that, if adduced at trial, the psychiatric and background evidence presented in his [remand] proceeding would have caused the sentencer to conclude "that the balance of aggravating and mitigating circumstances did not warrant death."

*Hance*, 258 Ga. at 658.

5. During the evidentiary hearing on remand, trial counsel testified that the state had made a pre-trial offer to permit Hammond to plead guilty and receive two life sentences. Trial counsel testified that he discussed this option at length with Hammond who declined to

accept it. Hammond now argues that trial counsel was ineffective in failing to consult mental health experts with regard to Hammond's ability to understand the nature of this plea offer. Hammond maintains that the issues of his "dull normal IQ of 83" and his alleged "attention deficit disorder" should have been explored to determine whether he was capable of rejecting the plea bargain.

The record does not show that present counsel raised this issue below. Further, Hammond's contention that trial counsel's failure to consult mental health experts detrimentally affected trial counsel's ability to communicate with him is based solely on conjecture. Hammond points out that "the decision concerning the plea offer was, in hindsight, perhaps the most critical decision-making point in the trial process." However, in evaluating an ineffective assistance claim, the court must make "every effort to . . . eliminate the distorting effects of hindsight," and, instead, "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Washington v. Strickland,* 466 U. S. at 689.

6. Hammond argues that trial counsel was ineffective in failing to move for a change of venue from Fulton County to another county where potential jurors would not have been exposed to extensive pretrial publicity.

The trial court's finding that the decision to not change venue from Fulton County was based on trial strategy is supported by the record. Hammond is an African-American. Trial counsel testified that he made a conscious decision that the trial should take place in Fulton County because of the significant percentage of African-Americans in the Fulton County jury pool. Hammond offers nothing to support his assertion that this objective could have been accomplished by seeking a change of venue to another county.

Trial counsel testified he was willing to consider a change of venue to Chatham County, but the state refused to consent. The state desired to move venue to Forsyth County which was unacceptable to the defense. Even if the parties had agreed to change venue to a particular county, the trial court would have determined venue, OCGA § 17-7-150 (a); *Hardwick v. State,* 264 Ga. 161, 164 (442 SE2d 236) (1994), thus removing the issue of jury pool composition from the control of the defense. As the trial court concluded on remand, trial counsel's strategic objective was accomplished in that the jury that tried the case consisted of eight African-American jurors and four white jurors. The trial court additionally found that the decision to allow trial to take place in Fulton County was strategically sound based on the infrequent imposition of the death penalty in capital cases tried in Fulton County. Further, the trial court's finding that the 12 jurors who decided the case had not been exposed to pre-trial publicity is supported by the record.

That present counsel might have moved for a change of venue in this case does not place trial counsel's decision to forego that option outside "the wide range of reasonably effective assistance." *Jefferson*, 263 Ga. at 320.

7. Hammond maintains that trial counsel was ineffective in his participation in voir dire.

(a) One accused of an interracial capital crime is entitled to have prospective jurors informed of the victim's race and to question them on the issue of racial bias. *Legare v. State*, 256 Ga. 302 (1) (348 SE2d 881) (1986). Trial counsel was not ineffective in failing to object to the district attorney's question to prospective jurors concerning possible racial bias because Hammond is black and the victim was white. That the district attorney's question is now "offensive" to Hammond has no bearing on his ineffective assistance claim under the standards set out in *Strickland v. Washington*, 466 U. S. 668.

We agree with the trial court that Hammond has not shown that trial counsel's failure to object to other allegedly improper questions by the district attorney during voir dire "undermined the proper functioning of the adversarial process." *Strickland*, 466 U. S. at 686.

(b) Hammond argues that trial counsel asked confusing and unenlightened questions of potential jurors; that he made no effort to rehabilitate jurors who expressed reservations about the death penalty; and that he failed to pursue lines of questioning that Hammond now contends were crucial.

We agree with the trial court that Hammond relies on exchanges between trial counsel and prospective jurors which are taken out of context and which, when considered in context, do not support his position that trial counsel was ineffective. The trial court's finding that trial counsel vigorously participated in the five days of voir dire is supported by the record. In addition to a jury questionnaire, prospective jurors were extensively examined by the trial court and the state, as well as trial counsel. The voir dire was sufficient to permit the discovery of bias or prejudice held by any prospective juror. *Curry v. State*, 255 Ga. 215 (2) (b) (336 SE2d 762) (1985). Further, as the trial court noted, trial counsel made 45 challenges for cause, 40 of which were granted.

We agree with the trial court that Hammond has failed to show that trial counsel's decisions regarding the extent of the voir dire, as well as whether to interpose challenges to certain jurors, were not reasonable and strategic. Hammond has not carried his burden of showing that trial counsel's actions and inactions in conducting voir dire fell outside the "wide range of reasonable professional assistance." *Strickland*, 466 U. S. at 689; *Williams v. State*, 258 Ga. 281, 289 (7) (368 SE2d 742) (1988).

8. Hammond argues that trial counsel was ineffective in failing to

object to numerous instances of prosecutorial misconduct during closing arguments in both phases of trial.

(a) Initially, we note that Hammond has failed to establish his claim of a "constitutional privilege" to both present evidence in his defense and open and conclude the closing arguments of the guilt/innocence phase of trial. Thus, trial counsel was not ineffective for failing to object to the order of closing arguments set forth in OCGA § 17-8-71.

(b) The prosecutor's statements regarding reasonable doubt were not misleading. Further, his limited remarks describing Julie Love and her family did not constitute impermissible victim impact evidence. *Sermons v. State*, 262 Ga. 286 (417 SE2d 144) (1992). It was not improper for the state to refer to Hammond during closing argument as "Demon," as this was shown to be Hammond's nickname. It was not improper to ask the jury to consider the issue of Hammond's future dangerousness based on the evidence presented at trial. *Vance v. State*, 262 Ga. 236 (1) (416 SE2d 516) (1992). A defendant's lack of remorse is relevant to sentencing. *Sears v. State*, 262 Ga. 805 (7) (426 SE2d 553) (1993). We do not read the prosecutor's remark concerning Hammond's lack of remorse as a comment on Hammond's failure to testify during the sentencing phase. As each of these alleged errors lacks merit, trial counsel was not ineffective in failing to object to them. Further, we read the prosecutor's commentary on Hammond's courtroom attire as merely part of the state's assertion that Hammond was a "wolf in sheep's clothing." Hammond has not established that his trial counsel was ineffective in failing to object to this remark.

(c) During the sentencing phase of trial, the assistant district attorney argued that the law of Georgia was not the only law which Hammond had violated.

> He violated the law of God. Thou shalt not kill. Whoever sheds the blood of man by man shall his blood be shed, for God created man in his own image. An eye for an eye; a tooth for a tooth. A life for a life.

Trial counsel made no objection to this argument. Such an argument has been condemned as an "inflammatory appeal to the jurors' private religious beliefs." *United States v. Giry*, 818 F2d 120, 133-134 (1st Cir. 1987). Further, an argument which suggests to the jury that all homicides should be punished by death runs afoul of OCGA § 17-10-30, which provides that only when the jury finds the existence, beyond a reasonable doubt, of at least one specified statutory aggravating circumstance, may the death penalty be imposed. See *Jones v. Kemp*, 706 FSupp. 1534, 1559-1560 (N.D. Ga. 1989). We conclude,

therefore, that this portion of the assistant district attorney's argument was improper. However, after reviewing the entire sentencing phase of trial, we conclude that these remarks neither changed the result of the sentencing trial nor rendered it fundamentally unfair. *Todd v. State*, 261 Ga. 766 (2) (410 SE2d 725) (1991); *Giry*, 818 F2d at 133-134. Therefore, Hammond has failed to establish ineffective assistance of trial counsel with regard to this claim.

9. Hammond argues that trial counsel was ineffective in calling defense witnesses who were unprepared and "who added nothing positive to the defense"; in failing to use subpoenas as a method for getting witnesses to the courthouse; and in not preventing Hammond from testifying on cross-examination that if a person committed the crimes Hammond had been accused of, "he should be killed." Hammond also maintains that trial counsel failed to present sufficient evidence in mitigation during the sentencing phase of trial.

As to the first two claims, Hammond has not shown that these alleged deficiencies on the part of trial counsel "so undermined . . . the adversarial process" that Hammond was deprived of a fair trial. *Strickland*, 466 U. S. at 686. We do not attempt to second-guess the decision made by trial counsel and Hammond for Hammond to testify in his own defense. As it was entitled to, the state mounted an aggressive cross-examination of Hammond about the similar transactions evidence previously admitted. During such vigorous cross-examination, even the most thoroughly prepared defendant may blurt out something unfavorable to his cause. Preparation of the witness does not guarantee that this will not happen and the fact that it does spontaneously happen does not render defense counsel ineffective.

With regard to mitigating evidence presented during the sentencing phase, Hammond does not suggest any additional mitigating evidence which could have and should have been presented.

10. This case was remanded to the trial court solely to resolve the issue of ineffective assistance of counsel. *Hammond*, 260 Ga. at 600. Hammond correctly acknowledges that the additional issues he now wishes to raise may not be considered in this proceeding.

We conclude that trial counsel did not render ineffective assistance in the direct appeal of Hammond's case to this court. Hammond's claims that trial counsel could have written more effectively, cited additional cases, and presented issues in a more articulate manner fail to demonstrate that trial counsel's assistance fell below the standard of reasonably effective assistance. A court does not grade counsel's performance when assessing an ineffective assistance claim. *Strickland*, 466 U. S. at 697; *Jefferson*, 263 Ga. at 318.

Further, appellate counsel does not have a duty to raise every nonfrivolous issue available to him. See *Jones v. Barnes*, 463 U. S. 745 (103 SC 3308, 77 LE2d 987) (1983). The trial court's remand or-

der adequately addresses and disposes of the issues which present counsel now contend should have been raised in the direct appeal.

11. In conclusion we hold that Hammond has failed to establish that trial counsel's assistance fell below the standard of reasonably effective assistance to which he is entitled under the Sixth Amendment. Further, the record does not support his claim that any errors made by trial counsel were so serious as to deprive him of a fair trial or of a fair sentencing determination.

12. The evidence supports the jury's findings, beyond a reasonable doubt, that the offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture and depravity of mind, OCGA § 17-10-30 (b) (7); that the murder was committed by Hammond while engaged in the capital felony of armed robbery, OCGA § 17-10-30 (b) (2); and that the murder was committed by a defendant with a prior record of conviction for the capital felony of armed robbery, OCGA § 17-10-30 (b) (1).

13. We conclude from our review of the record that the sentence of death was not imposed under the influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1). The sentence is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. The cases listed in the Appendix to this opinion support the imposition of the death penalty in this case.

*Judgment affirmed. Hunt, C. J., Fletcher, Thompson, JJ., and Presiding Judge Marion T. Pope, Jr. concur; Benham, P. J., Sears and Carley, JJ., dissent. Hunstein, J., disqualified.*

### APPENDIX.

*Hill v. State*, 263 Ga. 37 (427 SE2d 770) (1993); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Spencer v. State*, 260 Ga. 640 (398 SE2d 179) (1990); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989); *Miller v. State*, 259 Ga. 296 (380 SE2d 690) (1989); *Potts v. State*, 259 Ga. 96 (376 SE2d 851) (1989); *Kinsman v. State*, 259 Ga. 89 (376 SE2d 845) (1989); *Moon v. State*, 258 Ga. 748 (375 SE2d 442) (1988); *Lonchar v. State*, 258 Ga. 447 (369 SE2d 749) (1988); *Lee v. State*, 258 Ga. 82 (365 SE2d 99) (1988); *Harrison v. State*, 257 Ga. 528 (361 SE2d 149) (1987); *Beck v. State*, 255 Ga. 483 (340 SE2d 9) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984).

POPE, Presiding Judge, concurring.

I agree that Hammond's death sentence should be affirmed because he has not met his burden of showing that "the decision reached would reasonably likely have been different" had a different jury determined his sentence. See *Strickland v. Washington*, 466 U. S. 668, 696 (104 SC 2052, 80 LE2d 674) (1984). The facts of this case

and Hammond's prior crimes, together with the trial court's instruction to the sentencing jury that the prosecutor's impermissible argument was incorrect, convince me that defense counsel's failure to move for mistrial did not undermine the reliability of the sentencing proceeding. This is not just because the aggravating circumstances evidence is "overwhelming" — an unhelpful term which appellate courts sometimes use loosely and which may mean different things in different circumstances. Instead, it is because the facts of this case and Hammond's prior crimes are such that I do not believe there is a reasonable likelihood that any jury made up of individuals willing to ever impose the death penalty under any circumstances would have chosen not to do so under the circumstances presented here. See *Hammond v. State*, 260 Ga. 591, 600-605 (398 SE2d 168) (1990) (Smith, P. J., dissenting).[2]

Despite my agreement with the majority's outcome, I write separately to express my outrage at the prosecutor's incorrect and impermissible reference to parole. Although references to parole are now permitted in the sentencing phase (as long as they are correct), see OCGA § 17-10-31.1 (d), at the time of Hammond's trial they were clearly prohibited under both statutory and case law. It is inconceivable to me that the prosecutor did not know this, and prosecutors must realize that such misconduct will not be tolerated, even if it does not always result in reversal.

Pursuant to statutory mandate, this Court has established the Unified Appeal Procedure ("UAP") — a set of rules, guidelines and checklists "to be utilized by the trial court, the prosecuting attorney, and defense counsel prior to, during, and after the trial of cases in which the death penalty is sought." OCGA § 17-10-36 (b). As the UAP checklist at the time of Hammond's trial noted the statutory and case law precluding any reference to parole, this whole problem could have been avoided if both the prosecution and the defense utilized the UAP as required by OCGA § 17-10-36 (b). Thus, if nothing else, this case underscores the importance of using the UAP guidelines and checklists in death penalty cases.

BENHAM, Presiding Justice, dissenting.

"[T]here is no life without parole in Georgia. So one day [the defendant] will be a free man." When the assistant district attorney uttered those words during his argument to the jury in the sentencing phase of appellant's trial, a mistrial was appellant's for the asking. All he had to do was ask. Yet appellant's trial counsel did not think to

---

[2] This conclusion begs the question, of course, of why this case was remanded in the first place, since all the evidence on which we now rely to conclude there was no prejudice was before the Court at that time.

ask because he did not know to ask.[3]

If trial counsel had but asked, appellant automatically would have received a new sentencing trial instead of being given a death sentence. OCGA § 17-8-76 states:

(a) No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted . . .

(b) If counsel for either side in a criminal case argues to or in the presence of the jury as provided in subsection (a) of this Code section, opposing counsel shall have the right immediately to request the court to declare a mistrial, in which case it shall be mandatory upon the court to declare a mistrial. Failure to declare a mistrial shall constitute reversible error.

In concluding that trial counsel's failure to ask for the statutorily-mandated mistrial did not constitute ineffective assistance of counsel, the majority opines that the outcome would not have been different even if a mistrial had been sought because the evidence in aggravation presented by the State during the sentencing phase was overwhelming. I disagree with that reasoning. The fact that appellant would have had a new sentencing trial rather than be sentenced to death by a jury which heard impermissible remarks constitutes "a reasonable probability" that the outcome of the proceeding would have been different but for trial counsel's unprofessional error. Cf. *Jowers v. State*, 260 Ga. 459, 462 (396 SE2d 891) (1990). The majority concludes that it is speculation to suggest that a different jury might have recommended a sentence other than death. Yet, this Court has described the jury's role in the sentencing phase as "mak[ing] a *unique, individualized* judgment regarding the punishment that a particular person deserves. [Cit.]" (Emphasis supplied.) *Ross v. State*, 254 Ga. 22 (5) (d) (326 SE2d 194) (1985). The legislature's passage of OCGA § 17-8-76, a statute that *requires* a new trial in this situation, a statute that itself states it is reversible error not to declare a mistrial if the defendant asks for one, endorses the view that a different jury, untainted by the impermissible remark, might reach a conclu-

---

[3] This is not a case where defense counsel exercised reasonable trial strategy in failing to ask for a mistrial. Defense counsel made several motions for mistrial during the sentencing phase of appellant's trial and, as stated above, defense counsel did not know he could seek a mistrial when the assistant district attorney made the improper remark during closing argument.

sion different from that reachable by the tainted jury.

Because I cannot agree with the majority's conclusion that appellant did not show that a different outcome would have resulted had trial counsel asked for a mistrial, I must respectfully dissent from the majority's conclusion that trial counsel's representation of appellant did not fall below the constitutional standards of the Sixth Amendment.

I am authorized to state that Justice Sears and Justice Carley join this dissent.

DECIDED JANUARY 23, 1995 —
RECONSIDERATION DENIED FEBRUARY 10, 1995.

*Michael Mears, Nancy L. Mau, Clive A. Stafford-Smith, Robert L. McGlasson II,* for appellant.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Susan V. Boleyn, Senior Assistant Attorneys General,* for appellee.